## S12A1568. MARSH v. CLARKE COUNTY SCHOOL DISTRICT et al.

(732 SE2d 443)

THOMPSON, Presiding Justice.

This is a mandamus action in which a taxpayer seeks a writ requiring a school district to return "excess proceeds" collected pursuant to an educational sales and use tax approved by referendum. The superior court denied the writ, the taxpayer appealed, and we affirm.

In 2001, voters in the Clarke County School District approved a one percent educational sales and use tax (ELOST) for a period of five years beginning immediately upon the expiration of an ELOST that had been approved in 1997. The purpose of the referendum was to provide funds to pay the cost of specified, authorized projects totaling $87,849,000. The total amount of taxes collected pursuant to the 2001 ELOST was $93,413,789, which was $5,564,789 more than the amount of taxes the school district intended to collect, but less than the amount the school district actually spent on the authorized projects ($95,362,296). In 2006, voters again approved a one percent ELOST for an additional five years. In spite of these referendums and taxes, as of September 1, 2012, the school district has debt totaling at least $10,855,000.

Relying upon Art. VIII, Sec. VI, Par. IV (h) of the Georgia Constitution,[1] appellant sought a writ of mandamus requiring the school district to return "excess proceeds" of the 2001 ELOST to the taxpayers of the county by reducing the millage rate in an amount equal to the amount of the excess proceeds. The superior court denied the writ, finding, inter alia, appellant did not show a clear legal right to relief because the school district did not violate the "excess proceeds" provision. We agree with the superior court.

Looking to the plain language of the "excess proceeds" provision, it is clear that any monies remaining following expenditures for projects specified in the referendum are to be used to reduce the millage rate, but only if the amount collected exceeds (a) the actual cost of the authorized projects or educational expenditures and (b) the debt of the school district. The school district actually spent more

---

[1] This section provides:

Excess proceeds of the tax which remain following expenditure of proceeds for authorized projects or purposes for education shall be used solely for the purpose of reducing any indebtedness of the school system. In the event there is no indebtedness, such excess proceeds shall be used by such school system for the purpose of reducing its millage rate in an amount equivalent to the amount of such excess proceeds.

(i.e., $95,362,296) than the amount of taxes collected (i.e., $93,413,789) pursuant to the 2001 referendum on school projects authorized by the referendum. Moreover, as of September 1, 2012, the school district had at least $10,855,000 in debt, an amount greater than the amount of "excess proceeds." Thus, appellant did not establish a clear legal right to mandamus: he did not prove that "excess proceeds" remain for the purpose of reducing the millage rate. See *James v. Montgomery County Bd. of Ed.*, 283 Ga. 517 (661 SE2d 535) (2008) (writ of mandamus may be granted only when petitioner has a clear legal right to the relief sought).

We now turn our attention to petitioner's assertion that the superior court also erred in finding that his mandamus claim (an extraordinary legal remedy[2]), was barred by laches (an equitable defense[3]). Although not necessary to resolve this case, we address this matter to offer guidance to bench and bar because it appears that our case law is contradictory and engenders confusion.

There are two lines of authority covering this topic. One line, holding that a mandamus action can be barred by gross laches, stems from Justice Lumpkin's opinion in *Mayor & Alderman of Savannah v. Green*, 4 Ga. 26 (3) (1848): "To justify the Court in refusing the writ of *Mandamus*, on the ground that the party applying had slept on his rights — the *laches* must be gross — the delay unreasonable." This approach was reiterated in *Talmadge v. Cordell*, 167 Ga. 594, 595 (146 SE 467) (1928), *Southern Airways Co. v. Williams*, 213 Ga. 38 (96 SE2d 889) (1957), and, most recently, *West v. Fulton County*, 267 Ga. 456, 458, n. 3 (479 SE2d 722) (1997).

The other, much newer, line of cases, starts with *Crow v. McCallum*, 215 Ga. 692, 696 (113 SE2d 203) (1960), and states that a mandamus action cannot be barred by laches: "With reference to the plea of laches, it is necessary to say only that the doctrine of laches is an equitable one, and that the instant [mandamus] case is a legal proceeding to which this doctrine does not apply." See also *Addis v. Smith*, 226 Ga. 894, 895 (178 SE2d 191) (1970) (quoting *Crow*); *HCA Health Svcs. v. Roach*, 263 Ga. 798, 801 (3) (c) (439 SE2d 494) (1994) (citing *Addis*). This newer line of cases appears to be based on the well established notion that inasmuch as laches is an equitable defense, it cannot be applied to actions at law. See, e.g., *VATACS Group v. HomeSide Lending*, 281 Ga. 50 (635 SE2d 758) (2006) (laches cannot bar declaratory judgment action); *Stuckey v. Storms*, 265 Ga. 491 (1)

---

[2] *Clear Vision CATV Svcs. v. Mayor of Jesup*, 225 Ga. 757, 758 (171 SE2d 505) (1969).

[3] OCGA § 23-1-25.

(458 SE2d 344) (1995) ("laches is a purely equitable defense and is not applicable to a complaint for the enforcement of a legal right").

Here, petitioner alleges the trial court erred by applying the defense of laches to his legal claim for mandamus. However, although mandamus is characterized as a legal remedy, it is more accurate to say that mandamus is a special kind of legal remedy, to wit, an extraordinary legal remedy like prohibition, OCGA § 9-6-40, or quo warranto, OCGA § 9-6-60. In fact, the writ of mandamus is much like a mandatory injunction. Thus, it has been said that mandamus is quasi-equitable in its nature. See generally *Martin v. Hatfield*, 251 Ga. 638, 639-640 (3) (308 SE2d 833) (1983) (our courts view mandamus as being independent of equity but other courts may have been justified in acknowledging its quasi-equitable nature). This distinction perhaps explains why our earliest jurists ruled that, although laches cannot be used to bar a strictly legal action, gross laches can be employed to bar a mandamus action.

Mindful of this history and the unique nature of the remedy of mandamus, we conclude that the first line of cases, spawned by *Mayor & Alderman of Savannah v. Green*, supra, sets forth the correct rule, i.e., that a mandamus action can be barred by gross laches. See also Robert S. Stevens, A Plea for the Extension of Equitable Principles and Remedies, 41 Cornell L.Q. 351, 354 (1956) (urging application of the doctrine of laches in legal actions). We reach this conclusion because we believe it is consistent with the better reasoned and more established line of cases which represent Georgia's longstanding approach to this issue. Moreover, upon inspection, it appears that *Crow v. McCallum*, supra, relied on cases that do not stand for the proposition asserted.[4] It follows that *Crow* and its progeny were wrongly decided and must be overruled.[5]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 15, 2012 —
RECONSIDERATION DENIED NOVEMBER 19, 2012.

*IchterThomas, James J. Thomas II*, for appellant.

---

[4] *Crow* cites *Wood v. City Board of Plumbing Examiners*, 192 Ga. 415 (15 SE2d 486) (1941) and *Fletcher v. Gillespie*, 201 Ga. 377 (40 SE2d 45) (1946). *Wood* simply applied the rule set forth in *Mayor & Alderman of Savannah*, supra, and found that defendants did not prove laches. *Fletcher* was not a mandamus action.

[5] Proving that, every once in awhile, this Court, like courts everywhere, is forced to eat crow.

*Alston & Bird, Jay D. Bennett, Novell D. Berreth, Hall, Booth, Smith & Slover, Terrell W. Benton, Jr.,* for appellees.